## Stewart, Mulconnery & Co.'s Appeal.

1. An Act of Assembly provided that if the railroad of the P., F. W. & C. *Railroad* Company should be sold under mortgages, &c., the purchaser should become a corporation. The property, &c., of the *Railroad* Company were sold ; the purchasers, who were bondholders under the mortgage, were organized as the P., F. W. & C. *Railway* Company. *Held*, That they were not liable, under the facts in the case, for the obligations of the *Railroad* Company.

2. The *Railway* Company derived its existence under the Act of Assembly, passed before the sale, and their coming into existence was on the contingency of the sale. *Held*, that there was no privity between the two companies.

3. Stockholders in the original company, by an arrangement *subsequent* to the purchase and before the organization of the new company, were allowed, under the Act of Assembly, to become stockholders of the new company, without payment of any money. *Held*, that this did not impose on the new company the debts of the old.

4. Creditors of Broad attached his securities held by the old company ; judgment was had against the company as garnishees. The officers of the company having charge of the securities, not being parties to the attachment, were not liable to the plaintiffs.

5. Their possession and acts were those of the company, and their liability, if any, was to the company, and not to the plaintiffs.

November 6th 1872. Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Appeal from the District Court of *Allegheny county:* In Equity: No. 183, to October and November Term 1871.

On the 10th of April 1866, and the 13th of April 1867, respectively, Robert Stewart, Maurice Mulconnery and John Fleming filed a bill and an amended bill against The Pittsburg, Fort Wayne and Chicago *Railroad* Company; The Pittsburg, Fort Wayne and Chicago *Railway* Company, and George W. Cass, T. D. Messler and J. P. Henderson.

The bill averred:—

1. The incorporation of The Pittsburg, Fort Wayne and Chicago Railroad Company in 1865, by the legislatures of Pennsylvania, Ohio, Indiana and Illinois.

2, 3, 4. On the 19th of October 1856 the plaintiffs in this bill sued out in the District Court of Allegheny county a foreign attachment against Lewis Broad, in which the *railroad* company were made garnishees. On the 15th of April 1863 the plaintiffs recovered judgment in that attachment against Broad for $6847.73. A scire facias was issued against the *railroad* company as garnishees, and on the 14th of January 1864 there was recovered against them a judgment, finding that there were in their hands at the service of the writ certain notes belonging to Broad, and at that day the garnishees owed Broad $19,633.09; and that the plaintiff should have execution against the garnishees, to be levied of the notes of Broad in their hands to the amount of the plaintiffs' judgment, and if the garnishees should refuse to deliver the notes or pay the amount of the judgment, that it should be levied of the garnishees' own goods.

5. The garnishees refused to deliver the notes, and the sheriff could find no goods, &c.

6. The notes of Broad, in the hands of the *railroad* company, were three in number, amounting in all to $17,643.39, they were known as freight-warrants, and were not embraced in any mortgage of the company but were entitled to priority of payment from the company's assets, and were unaffected by any sale of the road or property.

7. In March 1860 proceedings to foreclose a mortgage of the company having been commenced in the Circuit Court of the United States, of the Western District of Pennsylvania, auxiliary to similar proceedings in the Circuit Court of the United States of Ohio, the *railroad* company procured an Act of Assembly of Pennsylvania, of March 31st 1860, entitled, "An Act to provide for the re-organization of The Pittsburg, Fort Wayne and Chicago Railroad Company: in pursuance of that act and of private agreement between the mortgage bondholders and the stockholders of the *railroad* company, the said company was re-organized under the name of "The Pittsburg, Fort Wayne and Chicago *Railway* Company, and all the assets and property of the *railroad* company,

including the notes or freight-warrants of Broad, and subject to the lien of the plaintiff's attachment, went into the possession of the *railway* company.

8. By reason that the stock and franchises of the railroad company were not covered by the foreclosed mortgage; and by reason of an agreement and understanding to that effect between the bondholders, the stockholders and the purchasers of the mortgaged premises at the marshal's sale; the stock of the *railroad* company became the stock of the company as re-organized under the name of "The Pittsburg, Fort Wayne and Chicago *Railway* Company."

9. By reason of the re-organization effected under the aforesaid understandings and the Act of Assembly the *railway* company became and were subject to the liabilities of the *railroad* company, and to the plaintiffs for their judgment against the *railroad* company.

10. Whether the *railway* company are liable or not for the debts of the *railroad* company, they are liable to the plaintiffs on their judgment, because they took into their possession the notes or freight-warrants of Broad.

11. The defendants refuse to account to the plaintiff for the freight-warrants or pay their judgment.

12. (Amended bill.) On the 19th of October 1858, G. W. Cass was president, John P. Henderson was treasurer, and T. D. Messler comptroller or auditor of the *railroad* company. They were in possession, custody, &c., of the papers and other valuables of the *railroad* company, including those in custody of the *railroad* company as trustees; amongst which papers, &c., were the notes or freight-warrants of Broad, attached as beforesaid; under the new arrangement, Cass, Henderson and Messler continued to hold the same positions in the *railway* company as they held in the *railroad* company. The plaintiffs "seek to discover what became of the freight-warrants, notes, &c.," belonging to Broad, and whosoever, whether the *railway* company or Cass, Henderson or Messler, "may be found chargeable with the possession of the said warrants," &c., shall be ordered to produce and surrender the warrants, &c., for the use of the plaintiffs, or account for their value to the extent of the plaintiffs' claim.

The prayers of the bill were for a decree :—

1. That the *railway* company are liable for the debts of the *railroad* company, and for the plaintiffs' judgment against the *railroad* company.

2. If such decree be not made, that the *railway* company be declared to be "the trustee and bailee for the use of the plaintiffs of the said notes or freight-warrants," of Broad, and be ordered to produce and deliver these warrants for the use of the plaintiffs, or pay the amount of their judgment against the *railroad* company.

The defendants answered :—

1. Admitting the incorporation of the *railroad* company, denied that they were ever known by that name or that the two corporations were identical.

2. They had no corporate existence on the 19th of October 1858, having been incorporated long afterwards by the legislatures of Pennsylvania, Ohio, Indiana and Illinois, and all the matters charged in paragraphs 2, 3 and 4 in the bill, took place before their incorporation, and defendants had no knowledge of them.

3. They have no knowledge of the matters in the 5th paragraph of the bill.

4. They have no knowledge of the notes mentioned in the 6th paragraph of the bill, or whether they were embraced in any mortgage of the *railroad* company, but if such notes existed they were a debt of the *railroad* company and were cut off, if not before paid, by the sale of the property and franchises of the *railroad* company under the mortgages of that company, by virtue of the decree of foreclosure before mentioned.

5. They admit the proceedings mentioned in the 7th paragraph of the bill, and that the property and franchises of the *railroad* company were sold under decrees of foreclosure of the mortgage, to certain gentlemen for $2,000,000; that afterwards the *railway* company was incorporated by the states of Pennsylvania, Ohio, Indiana and Illinois, and became the purchaser of the property, and has since owned it. They denied that the notes of freight-warrants of Broad ever came into the possession or control of the *railway* company.

6. To the 8th paragraph of the bill. They deny that the franchises, &c. of the *railroad* company were not covered and conveyed by the mortgages (admitting that the stock was not covered), they aver that the mortgages were a first lien on franchises and property of the *railroad* company, and the sale passed to the purchaser a clear title and free from all claims of creditors of the *railroad* company, but by an arrangement afterwards made, the stockholders of the *railroad* company were upon certain conditions allowed to convert their stock into the stock of the *railway* company.

7. They denied in answer to the 9th paragraph of the bill, that the *railway* company was by agreement or law liable for the debts of the *railroad* company, or for the amount of the judgment against the *railroad* company.

8. To the 10th paragraph of the bill. They deny the liability to plaintiffs on account of their judgment by reason of their receipts of the freight-warrants, and that the warrants were ever in their possession.

9. They deny upon information, &c. that on the 19th of October 1858, the *railroad* company were indebted to Broad, or held any freight-warrants or other securities belonging to him, but on the 9th of July 1858, and before the attachment, Broad assigned to S.

A. Taylor and N. Gleason, all his claims, &c., against the *railroad* company, including the freight-warrants, and the *railroad* company was before October 19th 1858 notified of the assignments. Taylor and Gleason brought suit in the Circuit Court of the United States for Illinois, against the *railroad* company, to recover their indebtedness to Broad, and recovered judgment against the *railroad* company for $41,468.18, which was the whole amount due to Broad, and which by agreement with Broad was to have been paid in bonds and freight-warrants. This was all the *railroad* company owed Broad. Soon after the judgment, it was compromised by payment of the *railroad* company to Taylor and Gleason for $17,500 in freight-warrants, which were delivered to Taylor and Gleason before the *railway* company existed. There were no freight-warrants of the *railroad* company in favor of Broad when the plaintiff's suit was commenced, nor at the time of the judgment; the freight-warrants were payable to bearer in freight on the railroad, and were sold by Taylor and Gleason to other parties.

Messler and Cass answered :—

1. That Cass, Messler and Henderson were respectively president, auditor and treasurer of the *railroad* company, and had possession of the money, choses in action, papers and other valuables of the company, but did not know of the company holding anything as trustees for others.

2. There were not amongst those articles any freight-warrants, or notes belonging to Broad, nor were such articles ever in their possession: the facts in relation to them are before set forth in paragraph 9th of the answer.

3. Cass, Messler and Henderson, hold the same positions in the *railway* company, which they held in the *railroad* company, except that the title of Comptroller was substituted for that of Auditor. On the 30th of April 1864, Messler ceased to be comptroller and became assistant-president; the other two continued in their offices.

A replication was filed and an examiner appointed. Afterwards B. F. Lucas was appointed master to take further testimony, &c., and report the facts together with the form of a decree.

The master found the allegations of the 2d, 3d and 4th paragraphs of the bill to be true; and that the three notes to Broad, mentioned in the 6th paragraph, were not embraced in any mortgage of the *railroad* company, were the property of Broad, and were unaffected by the sale of *railroad* company's property.

Referring to the Act of March 31st 1860, he said:—

" The purpose and object of this act are, in the opinion of the master, clearly indicated by its title. It was not for the purpose of creating a new, separate and independent corporation, but to *re-organize* one already in existence.

" Although the title to an act of the legislature was no part of the act itself, prior to the amendment to the Constitution of 1864,

yet it may well serve to shed light upon the true intent of the act. Besides, the object of the act as indicated in the title, seems to be as clearly indicated in the fourth section of the act itself. It is there denominated a re-organization of the Pittsburg, Fort Wayne and Chicago Railroad Company. Similar legislation was procured in the states of Illinois, Indiana and Ohio.

"The mortgages against the railroad companies having been foreclosed on the 24th of October 1861, the trustees sold the road, property and franchises of the *railroad* company to James F. D. Lanier, John Edgar Thomson, Samuel J. Tilden, Samuel Hanna and Louis H. Meyer, as trustees for various persons whose names do not appear upon the record. This sale was confirmed by the Circuit Courts of the United States, in the several states of Pennsylvania, Ohio, Indiana and Illinois, and on the 18th of February 1862, the trustees executed a deed to the purchasers.

" On the 26th day of February 1862, a meeting was held in the city of Pittsburg, at the office of the Pittsburg, Fort Wayne and Chicago Railroad Company, for the purpose of organizing, or rather of re-organizing, under the Acts of Assembly herein before mentioned. That re-organization was then effected, directors elected, and the name of the company changed from ' The Pittsburg, Fort Wayne and Chicago Railroad Company,' to ' The Pittsburg, Fort Wayne and Chicago Railway Company.' The board of directors then met and proceeded with the transaction of the business pertaining to their office.

" On the 2d day of March 1862, John F. D. Lanier, Samuel J. Tilden, Louis H. Meyer, J. Edgar Thomson and Samuel Hanna, executed a deed to the Pittsburg, Fort Wayne and Chicago Railway Company, for the road, property and franchises of the Pittsburg, Fort Wayne and Chicago Railroad Company.

" In the organization of the Pittsburg, Fort Wayne and Chicago Railway Company, the stockholders of the Pittsburg, Fort Wayne and Chicago Railroad Company became the stockholders in the reorganized company upon the same stock held by them in the old company, or in other words, their stock in the old organization was held and treated as stock in the new. * * *

" Then is the Pittsburg, Fort Wayne and Chicago Railway Company, but the re-organization of the Pittsburg, Fort Wayne and Chicago Railroad Company?.

" The master has gone into a very careful review of all the facts found by him, which, in his judgment, bear either directly or remotely on this question, and, as the result of the review, he has been led to the conclusion that this question must receive an affirmative answer.

" In determining this question the evidence must be considered as a whole and not in isolated parts. Thus considered, we have the following summary of the facts :—

[Stewart's Appeal.]

"The Pittsburg, Fort Wayne and Chicago Railroad Company became largely indebted, some of its indebtedness was secured by bonds and mortgages, while other portions of it were not so secured. Of the latter class of indebtedness was a debt of about $41,000 to Lewis Broad. Lewis Broad was indebted to the present complainants in a sum exceeding $6000. He being a non-resident of the state, the present complainants brought a suit in this court, which was commenced by writ of foreign attachment, in which the said company was made a garnishee, and the debt due by them was attached in their hands. A judgment was subsequently recovered by these complainants, first against Lewis Broad, the debtor, and afterwards against the said company garnishee. The company, acting through its officers, when the proper execution was issued, and the proper demand made by the sheriff, in the language of the law, 'neglected and refused' to deliver up the securities which had been admitted by them and adjudged by the court to be in their hands, and to belong to the defendant Lewis Broad.

"In the meantime proceedings were commenced and prosecuted in the Circuit Courts of the United States of the various districts through which the road passed, to foreclose the mortgages given by said company as well as those given by other companies for the payment of which the said company was liable.

"Pending these proceedings the said company applied to the legislature of Pennsylvania, and subsequently to the legislatures of the states of Ohio, Indiana and Illinois, for the passage of acts to provide for the re-organization of the said company, which acts were passed by the respective legislatures named.

"The proceedings to foreclose the said mortgages were prosecuted, no defence of any kind having been made by the said company, and were finally consummated by a decree of foreclosure, an order of sale and a sale made to five parties, in trust for some person or persons, but who the cestui que trust was is not disclosed except by what was subsequently done.

"After the said sale had been made to the said five trustees, and a conveyance made to them, an organization or re-organization of the company took place, and a conveyance was made by the said five trustees to the company re-organized under the name of the Pittsburg, Fort Wayne and Chicago Railway Company.

"In this re-organization the stockholders of the company under the old organization became stockholders without purchasing any new stock, and the officers of the old organization had charge of the company and its affairs through and during all these proceedings, and were elected and continued to be such officers under the new arrangement.

"From all these facts taken together the master is of opinion, and so finds, that the present company is but a re-organization of the former one, and not a new and independent corporation; that

all this machinery was used but as a device to avoid the payment of the debts of that company, and that therefore the said company is liable for the amount of complainants' judgment and costs.

" But even if this were otherwise, still if the securities for the indebtedness of the Pittsburg, Fort Wayne and Chicago Railroad Company to Lewis Broad, which were attached in the hands of the said company, went into the possession of the Pittsburg, Fort Wayne and Chicago Railway Company by its recognised officers or agents; and if the latter company was a new creation, a new corporation created and existing separate from and independent of the former company, the latter company held the said securities in trust for the present complainants, and if the said securities were permitted to go out of their hands and out of the jurisdiction of the court so that they could not be reached by the attaching creditors, or made available for the purpose of satisfying complainants' judgment, then the said company is liable to the complainants for the amount of their judgment and costs.

" This then brings us to the consideration of the second question raised by the allegations contained in the seventh paragraph of complainants' bill, and the denial thereof as contained in the fifth paragraph of defendants' answer; and that question is, whether the said securities ever did go into the custody, control and possession of the ·Pittsburg, Fort Wayne and Chicago Railway Company. * * *

" Upon this question the master finds record evidence of the fact that these securities did go into the custody, possession and control of the Pittsburg, Fort Wayne and Chicago Railroad Company.

" The answer of Thomas D. Messler to the interrogatories filed in No. 365, of April Term 1863, Stewart, Mulconnery & Co. against the Pittsburg, Fort Wayne and Chicago Railroad Company, admits the custody and possession of the notes or freight-warrants attached by complainants. This answer was sworn to by Mr. Messler on the 21st day of November 1863, and was filed in the cause and became a part of the record, and upon that answer the court rendered judgment in favor of the present complainants against the Pittsburg, Fort Wayne and Chicago Railroad Company.

" Thomas D. Messler was, at the time of the swearing to and filing of that answer, the comptroller of the Pittsburg, Fort Wayne and Chicago Railway Company, and, as he proves in his testimony taken in this case, the custodian of the securities in the possession of the said company.

" But if the theory of the defendants in this case be the correct one, if the Pittsburg, Fort Wayne and Chicago Railway Company be a new and independent corporation and not a re-organization of the former company, then Mr. Messler did not hold the said

securities as an officer of the former company, for that was dissolved. He could therefore hold the securities only as an officer of the company then in existence, as he himself proves that he held them in his official character.

"From the evidence in the cause as before referred to and the testimony of John P. Henderson, the treasurer of the company and one of the present defendants, the master is of opinion, and so finds, that the notes or freight-warrants which belonged to Lewis Broad, and which were attached by the present complainants in the hands of the Pittsburg, Fort Wayne and Chicago Railroad Company, did come into the control, custody and possession of the Pittsburg, Fort Wayne and Chicago Railway Company, and that the latter company did hold them in trust for the said complainants, as under all the circumstances disclosed in this case the law would imply such a trust, although none was expressed.

"But there is another view of this case which, in the opinion of the master, would render the Pittsburg, Fort Wayne and Chicago Railway Company liable to the present complainants for the amount of their judgment against the Pittsburg, Fort Wayne and Chicago Railroad Company.

"The stockholders of the Pittsburg, Fort Wayne and Chicago Railroad Company were entitled to nothing from their stock, upon the sale and transfer of the road, property and franchises of the company, either as dividends or otherwise, until the general creditors of the company were paid. It cannot be doubted that that company was insolvent.

"We have then the case of the stockholders of an insolvent corporation entering into an agreement or arrangement with the parties who are to, and do, purchase the road, stock and franchises of their company in trust for a company which is to be organized whether that company is to be a new company or a re-organization of the old one.

"The nature and terms of that agreement or arrangement are not disclosed by those who had it in their power fully to disclose them.

"But it is clear from the allegations contained in the bill, the answer of the defendants and the testimony in the cause, that the result of that agreement or arrangement was either to admit the stockholders of the Pittsburg, Fort Wayne and Chicago Railroad Company to become stockholders in the Pittsburg, Fort Wayne and Chicago Railway Company upon their stock in the old company, or else to exchange their stock in the old company for stock in the new. In either case the stockholders are permitted to realize the amount of their stock in whole or in part, while the general creditors are wholly unprovided for. And here it is to be observed that this arrangement or agreement is fully ratified by

the Pittsburg, Fort Wayne and Chicago Railway Company, when its organization is effected.

" This being so, the transaction was fraudulent as against the general creditors of the Pittsburg, Fort Wayne and Chicago Railroad Company, and being fraudulent, neither the mediate nor immediate purchasers of the road, property and franchises are to be regarded as standing in the light of bonâ fide purchasers, and they hold the property in trust for the old company, and the general creditor can enforce his claim against such property. * * *

" The master is of opinion, and so finds, that the Pittsburg, Fort Wayne and Chicago Railway Company hold the property of the Pittsburg, Fort Wayne and Chicago Railroad Company in trust for the latter company for the purpose of paying the debts due to its general creditors, if indeed it be not a mere re-organization of that company, and that therefore the said railway company is liable to the complainants for the amount of their judgment, with interest and costs.

" Then, as to the liability of the other defendants, George W. Cass, the president of the company, John P. Henderson, the treasurer, and Thomas D. Messler, the auditor under the old organization and the comptroller under the new, or re-organization.

" The master finds that the notes or freight-warrants attached by the complainants in the hands of the Pittsburg, Fort Wayne and Chicago Railroad Company were sent or taken by these defendants last named out of the jurisdiction of this court, so that they could not be forthcoming to answer the exigencies of the writ issued and placed in the hands of the sheriff for the purpose of collecting the amount of the judgment, if recovered by the present complainants, against the Pittsburg, Fort Wayne and Chicago Railroad Company.

" It appears from the answer of the defendants and the testimony of Mr. Henderson, that there was a reissue of the freight-warrants in 1861, after the re-organization of the company had been provided for, and that Mr. Cass, Mr. Henderson and Mr. Messler participated in this change or reissue and in the asportation of the said securities. It cannot be doubted that these parties had full knowledge of the existence and pendency of the attachment of the present complainants, for they were the very officers upon whom that attachment was served, and one at least of them had made answer to the interrogatories filed in that case.

" Under these circumstances it was the duty of these parties to retain these securities to answer the exigencies of any writ of execution which might be issued upon a judgment recovered in the attachment suit, and not to permit them to be carried out of their possession and out of the jurisdiction of the court; and having done so they are, in the opinion of the master, and he so finds,

liable to the complainants for the amount of their judgment and costs.

" It is no objection to their liability that they acted under the direction of the company of which they were officers, any more than it is an objection to the liability of the company that the action was that of the officers. If the officers were in fault they may be liable to the company, or if the company was in fault it may be liable over to the officers, but both are liable to the parties injured by the act. * * *

" There was no evidence of assignment of the securities to Taylor and Gleason, or to any one else. Neither was there any competent evidence of any suit having been brought in the Circuit Court of the United States for the Northern District of Illinois, for the recovery of the indebtedness of the Pittsburg, Fort. Wayne and Chicago Railroad Company to the said Lewis Broad. If such a suit was brought, and if such a recovery was had, and if it constituted any defence in this case, the facts alleged should have been proved by the record. That was the proper, and in the absence of an agreement to the contrary, the only evidence of the alleged facts.

" But if these allegations had been properly proved or admitted, they would, in the opinion of the master, constitute no defence which could avail any of the defendants here.

" The suit alleged to have been brought by Taylor and Gleason in the Circuit Court for the Northern District of Illinois is alleged to have been instituted only on the 22d day of February 1860, one year, four months and three days after the institution of the suit by complainants in the District Court.

" Although the District Court of Allegheny county and the Circuit Court of the United States for the Northern District of Illinois may originally have had concurrent jurisdiction, yet the suit having been commenced in the District Court on the 19th of October 1858, the jurisdiction of that court became at once exclusive, and the Circuit Court of the United States had no jurisdiction on the 22d of February 1860.

" It was the duty of Taylor and Gleason, if they claimed to have a prior assignment of the securities attached, to intervene in the attachment suit in the District Court, and have the right determined there. Failing to do that, they would be concluded by the judgment.

" It is therefore, in the opinion of the master, a matter of no consequence whether the allegations contained in the ninth paragraph of the defendants' answer be proved or not, as they constitute no defence for any of the defendants in this proceeding.

" Upon the whole case the master is of the opinion, and so finds :—

" 1. That the said defendants, the Pittsburg, Fort Wayne and Chicago Railway Company, are liable for the debts and defaults of

the Pittsburg, Fort Wayne and Chicago Railroad Company, and therefore for the payment of complainants' judgment against the Pittsburg, Fort Wayne and Chicago Railroad Company;

"2. That the Pittsburg, Fort Wayne and Chicago Railway Company, and the said George W. Cass, John P. Henderson and Thomas D. Messler, are the trustees and bailees, for the use of the complainants, of the said notes or freight-warrants belonging to the said Lewis Broad, and attached at the suit of complainants; and that the Pittsburg, Fort Wayne and Chicago Railway Company, and the said George W. Cass, John P. Henderson and Thomas D. Messler, ought to be decreed and ordered to produce and deliver the said notes or freight-warrants to and for the use of the present complainants, or in default thereof to pay to the said complainants the amount of their said judgment against the Pittsburg, Fort Wayne and Chicago Railroad Company, together with the interest and costs which have accrued thereon, and the costs of this present suit." * * *

The Pennsylvania Act of Assembly provided:

"Sect. 1. In case the railroad of The Pittsburg, Fort Wayne and Chicago Railroad Company should be sold by virtue of any mortgage or deed of trust, * * * the persons on account of whom the purchase * * * shall have been made * * * are constituted a body corporate," &c.  That, after notice as provided in the act, the purchasers shall meet to elect directors, and at the election "the persons for whom the purchase shall have been made shall be entitled to vote in proportion of one vote for each $100, of par value, which they may have contributed in bonds, entitled to distributive shares in the proceeds of such sale, or in cash towards the purchase * * * all persons holding bonds * * * prior in lien to those by virtue of which such sale shall have been made shall be entitled to one vote for every $100 of the par value of the said bonds." * * *  The corporation created by the act to have power to "acquire by purchase or otherwise, and hold, &c., The Pittsburg, Fort Wayne and Chicago Railroad * * * and all equipment * * * all lands, property, franchises," &c., * * * and to operate it.

"Sect. 3. The said corporation, formed pursuant to this act shall, within six months after its organization, likewise have power to assume such debts, liabilities and claims against the said Pittsburg, Fort Wayne and Chicago Railroad Company, and make such settlements or adjustments with any of the stockholders, or other parties interested therein, as it may deem proper, and for the said purposes to use such portion of the stock or bonds hereby authorized to be created, and in such manner as it may deem necessary.

"Sect. 4. Full authority is hereby given to the corporate authorities of the several county, township, city, village or other

municipal corporations, owning or holders of stock in the said company, and to all persons holding the same in any fiduciary capacity, to accept and receive, under the re-organization, such portion of the new stock as may be apportioned to the stock so owned and held."

The evidence by Messler was that G. W. Cass, T. D. Messler and J. P. Henderson held substantially the same offices in the *railway* company as they had in the *railroad* company, Messler having some time subsequently to the organization of the *railway* company been elected their assistant president; whatever papers had been in their possession as officers of the *railroad* company, remained in their possession under the organization of the *railway* company. Immediately after the execution of Broad's freight-warrants, they were sent, by order of the president, under the advice of their attorney in Chicago, to be deposited with the clerk of the Superior Court at Chicago, in pursuance of an order of that court. These warrants were executed early in 1861, in the form of a draft, drawn by the auditor, accepted by the treasurer, and payable in money due the company for the transportation of freight, and amounted to between $17,000 and $18,000. The land bonds were secured by mortgage on special real estate of the company not covered by the general mortgage; $19,000 of those bonds were sent to Chicago in the latter part of 1860, through the president; they had been previously in J. Edgar Thomson's possession, who was chief engineer; the freight-warrants have since been paid.

" Upon the re-organization of the new company, the stock of the old company—such part of it as the holders thereof had assented to a certain agreement for a re-organization of the affairs of the old company—was converted into the stock of the new company. The great majority of the stock agreed to a re-organization. By this agreement the stockholders of the old company were not to pay any money in consideration of the new stock."

J. P. Henderson testified:—

" I was treasurer of The Pittsburg, Fort Wayne and Chicago Railroad Company; am now treasurer of The Pittsburg, Fort Wayne and Chicago Railway Company. Lewis Broad was a contractor and creditor of The Pittsburg, Fort Wayne and Chicago Railroad Company. I became treasurer of the railway company immediately upon its organization. The freight-warrants were in the custody of the auditor; the real estate bonds were in the hands of the treasurer. The freight-warrants were evidences of indebtedness issued by the auditor, and did not come into the possession of the treasurer. My duties as officer of the company did not make it necessary for me to have any knowledge of any freight-warrants that might have been in the custody of the company. These freight-warrants were acknowledgments of indebtedness in favor of the person named therein.

[*Stewart's Appeal.*]

"A freight-warrant, as used by that company, was an evidence of indebtedness in favor of a person named therein or bearer, for a specified sum, and payable out of freights earned by the company. The sum so engaged to be paid was not considered as covered by the mortgage of the company, but was a substitute for ready money which the company might not have, and to give the holder of it something that he might dispose of for money. I presume this to be the object of the issue; it is an extraordinary issue."

Exceptions were filed to the master's report, and after argument it was "decreed that the complainants' bill be dismissed out of this court, and that the complainants pay the costs in this case."

The complainants appealed to the Supreme Court, and assigned for error:—

1. Dismissing complainants' bill.

2. Not decreeing as prayed for in complainants' bill.

3. Not decreeing that The Pittsburg, Fort Wayne and Chicago Railway Company were liable to complainants for the amount of their claim against The Pittsburg, Fort Wayne and Chicago Railroad Company.

4. Not decreeing that George W. Cass, T. D. Messler and J. P. Henderson were liable to complainants, as alleged in their bill.

*G. Shiras, Jr.*, for appellants, cited Railroad Company *v.* Howard, 7 Wallace 392; Mumma *v.* The Potomac Co., 8 Peters 281; Curran *v.* State of Arkansas, 15 Howard 304; Minor *v.* Mechanics' Bank, 1 Peters 46.

*J. A. Lowrie* and *A. M. Brown*, for appellees.—An agent is responsible to his principal, and he to third persons injured: Denny *v.* Manhattan Co., 2 Denio 115; United States *v.* Bevan, Crabbe 324; Costigan *v.* Newland, 12 Barb. 456; Colvin *v.* Halbrooke, 2 Comstock 126; Shearman & Redfield on Negligence, sect. 111.

The opinion of the court was delivered, January 6th 1873, by

AGNEW, J.—George W. Cass, T. D. Messler and John P. Henderson, the president, auditor and treasurer of the Pittsburg, Fort Wayne and Chicago Rail*road* Company, and afterwards the president, comptroller and treasurer of the Pittsburg, Fort Wayne and Chicago Rail*way* Company, were in no way liable to the plaintiffs as attaching creditors. The attachment was not served on them and no judgment was had against them as garnishees. Nor were they trustees of or for the debts attached or the securities representing these debts. So far as they were connected with these debts, or in possession of the securities, they were acting as officers and agents of the rail*road* company and not of the rail*way* company, and all they did was in their official capacity and in subordination to the rail*road* company. Their

position and acts were those of the rail*road* company, and were not individual either in their own right or their own wrong. No negligence is charged to make them individually responsible ; and if any were, the liability would be to their own principal, and not to the plaintiffs, with whom they were in no privity, and who have not charged them by attachment. The liability for the debts and securities attached was, therefore, wholly upon the rail*road* company. It is not denied that the rail*road* company is liable. The liability was fixed by the judgment in the attachment, and the return to the execution which followed the judgment.

The liability of the other defendant, the rail*way* company, is attempted to be founded upon its alleged privity with its predecessor, the rail*road* company ; and its possession of the assets of the rail*road* company as trustees for the stockholders of the latter. Neither position is sustained. The Pittsburg, Fort Wayne and Chicago Rail*way* Company is a new, original and distinct corporation, deriving its existence and franchises under and pursuant to the Act of the 31st March 1860, Pamph. L. 498, and was by the terms of the act dependent for its existence upon the sale in law or equity of the railroad of the Pittsburg, Fort Wayne and Chicago Rail*road* Company. It was upon this contingency involving the extinction of the rail*road* company that the law itself placed the incorporation of the rail*way* company. The term "reorganization" in the title of the act, which was passed before the adoption of the constitutional amendment of 1864, cannot overcome the very facts of the case, and the language and intent of the law. Nor could the organization of the company precede the contingency of sale, made by the act the basis of the organization of the new company. Nor is the position sustained by the facts in evidence that the new company is the trustee for the stockholders of the old company of any of its assets, and consequently it is not trustee for the creditors, whose equity, in case of assets, would be superior to that of the stockholders. It is not proved as charged in the bill that the re-organization, as it is termed, was in pursuance of certain private agreements between the mortgage bondholders and the stockholders whereby the new company became possessed of assets or property belonging to the old company. On the contrary the proof is that the road, property and franchises of the old company were sold under judicial proceedings to every appearance adversary ; and the sum bid, two millions, paid to a receiver before the sale was confirmed, and the deed ordered to be made, vesting the title and franchises of the old company in the individual purchasers, through whom the new company derives its title. In this connection it is to be noticed that there is no charge of collusion or fraud alleged in the bill to subvert the judicial proceedings under which the property and franchises of the old company passed to the purchasers and from

22 P. F. SMITH—20

them to the new company. The whole case of the plaintiffs, in this branch of it, is rested on the fact that the new company came into possession of the assets and property of the old company under such a voluntary arrangement with the stockholders of the old company as would leave the property liable to the creditors of the old company. This liability is expressly denied in the seventh paragraph of the answer, while in the sixth paragraph, not only is it alleged that the sale and foreclosure under the mortgages passed a free and unencumbered title to the new company, but it also alleged that the rights of the old stockholders were acquired under an arrangement *subsequently* made; and this accords with the power conferred upon the new company by the third section of the Act of March 31st 1860. Taking all the facts and evidence found properly in the record, we discover no proof of a preliminary agreement, or such an arrangement with the stockholders of the old company, or such admissions of liability, as would charge the new company with a trust of any of the assets for the creditors of the old company. This is the difference between the present case and that cited from 7 Wallace 392: Railroad Company *v.* Howard. There not only was there a preliminary agreement to sell the property of the Mississippi and Missouri Railroad Company to the Chicago and Rock Island Company, and to make the proceeding to foreclose the mortgage and sell the roads of the former, ancillary to the agreement; but after all this had been done, and the property vested in the latter company, the latter admitted the possession of sixteen per cent. of the fund in hand to belong to the stockholders of the former company, and the real question was whether the stockholders or the *creditors* of the Mississippi and Missouri Railroad Company should be entitled to this surplus fund? It was held of course that the equity of the creditors was superior to that of the stockholders. Finding no error in the decree dismissing the bill with costs, it is affirmed, and the appellants are ordered to pay the costs of this appeal.