MANATEE COUNTY GROWERS ASSN. v. FLORIDA POWER & LIGHT CO.

152 So. 181.
Opinion Filed January 8, 1934.

*D. R. Peacock,* for Appellant;

*G. B. Knowles, Bryan Hanks, R. A. Henderson* (of Miami) and *Lofton, Stokes & Calkins,* for Appellee.

BUFORD, J.—On the 18th day of December, 1929, Manatee Celery Company, a corporation existing under the laws of the State of Florida, entered into a contract with Florida Power & Light Company, a corporation existing under the laws of the State of Florida, which contract amongst other things, provided as follows:

"1.   That the company shall supply and the consumer shall receive and pay for all power and energy required for and in connection with the Consumer's *Celery Washing and Precooling Plant* located at Vanderipe Siding, Manatee County, *Florida,* in accordance with the terms and conditions of the company's attached rate schedule No. 183, marked Exhibit 'A' and made a part hereof,

"2.   That the minimum quantity of power contracted for hereunder and to be received, and paid for by the consumer shall be *25 Contract HP.*

"3.   That the point of delivery for the electric power and energy delivered hereunder shall be *on the Company's line used for supplying service hereunder at the pole thereof nearest to and not more than 100 feet from Consumer's property used for and in connection with operations hereunder.*

"4.   That the electric power and energy delivered hereunder shall be of the character commonly known as alternating current of approximately 230 volts and approximately sixty cycles, _____ 3 phase, and 3 wire, and shall be metered at 230 volts.

"5. That all payments shall be made at the company's office in Bradenton, Florida.

"6. That the terms of this agreement shall be for ten years from March 1st, 1930, or from the date of first rendering service hereunder, whichever shall be the earlier, and shall extend for a further period, or periods, of five years from said date of termination or any extension thereof, unless by written notice given by either party to the other, not more than ninety (90) days nor less than thirty (30) days before any date of termination hereunder either party shall have signified its desire to terminate this agreement."

From about the 1st day of March, 1930, until on or about the 12th day of January, 1931, Florida Power & Light Company furnished the power contracted for and Manatee Celery Company received and paid for the power according to the terms of its contract. About the 12th day of January, 1931, Manatee Celery Company surrendered the possession of the celery washing and precooling plant described in the contract unto Manatee County Growers Association and thereupon Manatee County Growers Association took over the operation of the celery washing and precooling plant described in the contract and operated the same, receiving from Florida Light and Power Company the electrical power and energy necessary for the use in such plant and paid Florida Power & Light Company for such electrical power and energy under the terms of the contract.

The record shows that the appellant here operated this plant for several months before it determined to purchase the same, but, thereafter, and while still operating the plant and using the power of the appellee furnished under the terms of the contract with its predecessor in title it acquired title to the celery washing and precooling plant described

in the contract and thereafter for a long period of time continued to operate the plant and to receive its electrical power and energy from Florida Power & Light Company under the terms and conditions of the contract above referred to. That during the period in which it so operated the plant certain improvements and replacements were made by Florida Power & Light Company to better enable it to carry out its contract in the furnishing of electrical power and energy for the use of that plant.

Sometime in the year 1932 the appellant, Manatee County Growers Association, decided that it would discontinue the use of the power furnished by Florida Power & Light Company and would install machinery of its own to generate the electrical power and energy necessary for the use of its plant, and, when it was about to install such machinery Florida Power & Light Company filed a suit in the Federal Court of the Southern District of Florida against the manufacturing company from which Manatee County Growers Association was about to purchase its machinery to enjoin that company from interfering with the contract of Florida Power & Light Company by furnishing Manatee County Growers Association machinery with which to generate its own power and energy for the use of the plant. That suit was dismissed and we think the orders made therein have no effect upon this suit.

Florida Power & Light Company then filed suit in the Circuit Court of Manatee County praying an injunction prohibiting Manatee County Growers Association from producing or procuring electrical power and energy from the operation of its plant save and except from any source other than Florida Power & Light Company under the terms of its contract. The result was a decree in favor of Florida

Power & Light Company granting the relief prayed. Thereupon appeal was taken.

That injunction is the proper remedy to be invoked to prevent continuous breach of a contract of this sort in the manner in which it is alleged and shown that this contract was about to be breached is too well settled to require citation of numerous authorities, but some of those may well be referred to here. See High on Injunctions, 4th Ed., Sec. 1134; Montgomery Light & Power Co. v. Montgomery Traction Company, 191 Fed. 657, wherein it was said:

"A court of equity has jurisdiction of a suit to enjoin a street railroad company from arbitrarily refusing to perform a contract by which it bound itself to take all of the electrical power required in its business for a term of years from an electric power company at stated prices, so long as the power company commits no breach of its own agreement to furnish such power and would suffer irreparable injury from its breach by defendant."

Beck v. Indianapolis Light & Power Co., 36 Ind. Appls. 600, 76 N. E. 313, in which case it was said:

"The American authorities recognize the equitable jurisdiction for the specific enforcement of trade contracts by injunction, where an action for damages will not afford as complete and adequate a remedy as that of injunction. In Xenia Real Estate Co. v. Macy, supra, the court held that the appellee, under the facts alleged in the complaint, was entitled to injunctive relief, saying: 'If, from the facts alleged in the complaint, it is apparent that the appellee had no other complete or adequate remedy, the same was sufficient to entitle him to an injunction.' In the course of the opinion the court said: 'It is not necessary in an application for injunction, as insisted by appellant, to aver and prove that the plaintiff will suffer irreparable injury if the

relief by injunction is not granted. All that is necessary is to aver that plaintiff will suffer great injury.' Section 1162, Burn's Ann. St. 1894; Section 1148, Rev. St. 1881."

. Also Lee et al. v. Clearwater Growers Association, 93 Fla. 214, 111 Sou. 722, in which this Court, speaking through Mr. Justice Terrell, said:

. "It is last contended that Paragraph 7 of Section 4514, Revised General Statutes of Florida, 1920, relating to Co-operative Marketing Associations, is invalid because it contravenes the general law of this State with respect to granting and issuing writs of injunction.

. "That part of Section 4514, Revised General Statutes, 1920, which is here complained of, is as follows:

" 'In the event of any breach or threatened breach of a marketing contract by a member, the association shall be entitled to an injunction to prevent the further breach of the contract, and to a decree of specific performance thereof.'

. "It is not contended that this provision of Section 4514, which was amended by Chapter 10097, Acts of 1925, is violative of any provision of the fundamental or organic law of this State, or of the United States. In Washington Cranberry Growers' Assn. v. Moore, *supra*, it was held that injunction would lie to restrain the breach of a contract of the character of the one involved here, thereby indirectly affecting its specific performance, where the intent was to rely on performance and the contract is one which could not be specifically enforced in a court of equity of the fact that it would require the performance of continuous duties. Oregon Growers' Co-op. Ass'n v. Lentz, *supra;* Tobacco Growers' Co-op. Ass'n v. Jones, *supra,* and cases therein cited."

The record shows that the complainant could have no

adequate and complete remedy at law because, amongst other reasons, it was a fact that it could never be ascertained what amount of power and energy or the value of such power and energy which might be used by the defendant during any stated period until after the same had been used and its amount and value determined by the meters established for that purpose. The relief prayed is negative in its character. It is not to compel the consumer to use any amount of power, but it is to prevent the consumer from using for the purpose of operating its plant any electrical power or energy not furnished under the contract by the complainant.

It has been contended before us that the defendant, appellant here, did not assume the contract and become bound by its terms and that whether or not it had assumed the contract was a question of fact to be determined by a jury. There might arise cases in which this contention would be tenable but we take it that it is not so in this case. The facts hereinabove set forth are uncontradicted and, under this state of facts, the defendant, appellant here, can not be heard to say that it did not assume the contract and make it its own. This case must be differentiated from the case of The Ocean Accident & Guarantee Co. Ltd., v. John Tucker, opinion filed October 19, 1933, where a suit in equity was filed to cancel a policy of insurance after liability had accrued if the policy was valid and, likewise, it is differentiated from the case of Prudential Ins. Co. of America v. Mae Irene Scott, et al., which was an equity suit, having the same relief for its purpose. In those cases the insurance companies could not suffer any loss until the beneficiaries shall have recovered judgment against the insurance companies and if the policies were invalid for any cause the invalidity could be pleaded in a court of law as

a defense to liability and, therefore, the insurance companies had a full, adequate and complete remedy to be invoked and adjudicated before incurring loss. But here, unless the complainants in the court below, appellee in this court, may maintain its injunction its contract will be breached with no adequate, full and complete remedy at law, because there is no way for its measure of damage to be determined except by first learning by actual operation what it is entitled to recover from the consumer.

Our conclusion as to the assumption of the contract is adequately supported by numerous authorities ctied in briefs, some of which are as follows:

In Horsky *et al.* v. Helena Consolidated Water Co., 13 Mont. 229, 33 Pac. 689, it is held:

"A complaint which alleges that plaintiff made a contract with a water company to furnish it with water for a certain period, and that the company sold its right in the contract to defendant, who 'assumed' the contract, and 'substituted itself for the old company' furnished water, and collected rates, sufficiently alleges an assumption of the contract on the part of the defendant.

"2. An allegation that defendant collected the price and water rates mentioned in the contract discloses a valuable consideration for the assumption of the contract.

"3. An injunction will lie to enjoin a water company from breaking its contract to supply water to a brewery when turning off the water would stop the brewery, destroy a large quantity of malt, and injure the brewer's trade."

In Lobee, *et al.*, v. Denby Motor Truck Co., 163 N. Y. S. 951, it is held:

"Where a contract provides that it is nonassignable, which provision is for one party's benefit, such party may waive

the restriction; and this may be shown as well by conduct as by writing."

In Wiggins Ferry Co. v. Ohio & Mississippi R. Co., 142 U. S. 396, 35 Law Ed. 1055, the Supreme Court of the United States said:

"The railway company was not the formal assignee of the interest of the railroad company in such a contract, nor could it become so under the eighth clause of the contract, without the consent of the ferry company. It is a well established principle that the mere purchase of a railway under a foreclosure sale by a new corporation does not of itself make such new corporation liable for the obligations of the old one. Stewart's App. 72 Pa. 291. Vilas v. Milwaukee & P. du C. R. Co., 17 Wis. 497; Smith v. Chicago & S. W. R. Co., 18 Wis. 17. The railway company was then, upon taking possession of the property of the railroad company, at liberty to renounce the benefit of such contract, if it choose to do so, or to make such further arrangement with the ferry company as they might be able to agree upon. It did neither, but still maintained possession of the land. In view of the fact that the railway company used this property precisely as it had been used, improved it at great expense, by filling up low places and securing it from the overflow of the river; graded and paved the river front, erected buildings, paid the annual taxes, and, until 1871, employed the ferry company to transport its passengers and freight to and from the city— in short, in the language of the answer, doing and performing 'all that the terms of the said contract required the said Ohio & Mississippi Railroad Company to do and perform,' we think it must be held in a court of equity to have adopted such contract, and made it its own. This construction certainly consorts with the act and conduct of both

parties, between whom different modifications of the contract were proposed and discussed at different times from 1872 to 1875. Under the circumstances of this case, we agree with the conclusion of the special master, that the railway company acquired an equitable estate in the premises, of like character as the legal estate previously held by the railroad company, which estate was in equity unimpeachable, and that the railway company and the ferry company sustained the same relation as had previously existed under the deed between the railroad company and the ferry company; or, at least, that both parties are equitably estopped from denying that such was the case. · It is not necessary that a party should deliberately agree to be bound by the terms of a contract to which he is a stranger, if, having knowledge of such contract, he deliberately enters into relations with one of the parties, which are only consistent with the adoption of such contract. If a person conduct himself in such manner as to lead the other party to believe that he has made a contract his own, and his acts are only explicable upon that theory, he will not be permitted afterwards to repudiate any of its obligations. 2 Pom. Eq. Jur. No. 965; Chicago A. R. Co. v. Chicago V. & W. Coal Co., 79 Ill. 121. This principle is applicable here, and it results from this that, if the railway company or its receiver has been guilty of a breach of this contract, the petitioner is entitled to recover its damages, by reason of such breach, in this proceeding, unless it has in some way become estopped by the judgments of the State courts of Illinois, or by its own conduct and disclaimers in this suit."

In Harlow, et al., v. Oregonian Publishing Company, et al., 53 Oregon 272, 100 Pac. 7, it is said:

"Under the facts presented, it is unnecessary to determine whether the memorandum of agreement before us contains

within itself terms providing for the power to assign, etc., for it is unquestionably the law that even though the instrument within itself does not provide that it shall bind the heirs and assigns of the parties thereto, if it has been recognized and acted upon by the parties interested, the objection that no provision is made therein for its assignment or transfer is untenable. The benefits cannot knowingly, or with implied knowledge thereof, be received without the recipient assuming the burdens which may accompany them. Page, Contracts, No. 73, 1262; 9 Cyc. 387; McLeod v. Despain, 49 Ore. 536, 563, 90 Pac. 492, 92 Pac. 1088; Nave v. Sturgess, 5 Mo. App. 557; Bailey v. Rutjes, 86 N. C. 517; Stucky v. Hardy, 15 Ind. App. 19, 41 N. E. 606; Weatherhogg v. Board of Commnrs., 158 Ind. 14, 62 N. E. 477; Staples v. Somerville, 176 Mass. 237, 57 N. E. 380; Freedman's Savings Bank v. Shepherd, 127 U. S. 494, 8 Sup. Ct. 1250, 32 Law Ed. 163; Atlanta Buggy Co. v. Hess Spring Co., 124 Ga. 338, 52 S. E. 613, 4 L. R. A. (N. S.) 431."

See also Barker Auto Co. v. Bennett, et al., 219 Mass. 304, 106 N. E. 990, and the Chicago Rock Island & Pacific Ry. Co. v. The Denver and Rio Grande R. R. Co., 143 U. S. 596, 36 L. Ed. 277.

In paragraph VIII of the answer defendants say:

"In answer to paragraph IX, this defendant denies that the Manatee Celery Co. and this defendant are in equity and good conscience one business concern, but this defendant admits that some of the directors in the defendant were also directors in the Celery Co., but this defendant says that the directors had nothing to do with the actual management of this business but say that said business is conducted and managed by its manager, R. H. English, and that if the said directors had any knowledge of the existence of said contract that it was not communicated to its manager, and that

the contract and the directors in the corporations knew that the contract could not be assigned or transferred without the express written consent of the plaintiff, and no effort was ever made to obtain the consent of plaintiff for such transfer or assignment, and if this defendant had known or was advised that the plaintiff was going to insist on this defendant carrying out the terms of said contract Exhibit 'A,' it would not have paid any bills whatever, but this was carefully concealed by the plaintiff for the purpose of attempting to bind this defendant by a contract which it did not know anything about, and this defendant denies that the Manatee Celery Co. operated as unit of this defendant or in any other manner, and as to what negotiations were had between the plaintiff and F. Emory Sharp, this defendant says that it is without knowledge."

It is elementary that directors are charged with full knowledge of the conduct of the affairs of the corporations of which they are members and they cannot be heard to say that they "have nothing to do with the management of the business."

The record shows that at least four of the directors of Manatee County Growers Association and directors of Manatee Celery Company were identical. It also shows that, as above stated, Manatee County Growers Association took over the plant of Manatee Celery Company and operated it for several months immediately prior to the transfer of title to the property for the purpose of determining whether or not it would effectuate the transfer and that during this period the plant was receiving and paying for its electrical current and energy under the contract.

As a matter of law, the legally undisputed facts establish the adoption of the terms of the contract by the appellant.

. We find no reversible error disclosed by the record and the decree should, therefore, be affirmed. It is so ordered.

Affirmed.

DAVIS, C. J., and WHITFIELD, ELLIS and TERRELL, J. J., and HUTCHISON, Circuit Judge, concur.